IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GORDON L. M.,[1]

       Plaintiff,

vs.

COMMISSIONER of SOCIAL SECURITY,

       Defendant.

Case No. 18-cv-02055-DGW[2]

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for DIB that was denied initially on November 1, 1994. Plaintiff did not appeal that determination. (Tr. 161). Plaintiff filed another application for DIB in December 2015, alleging disability as of September 3, 1992. Plaintiff was last insured on December 31, 1997. (Tr. 54, 138-141). After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application on November 7, 2016. (Tr. 19-27). The Appeals Council denied review, and the

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 9, 21.

decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies were exhausted and a timely complaint was filed in this Court.

On October 23, 2017, Senior United States District Judge J. Phil Gilbert reversed the ruling of the ALJ and remanded to the Commissioner for rehearing and reconsideration of the evidence. After holding another evidentiary hearing, the ALJ denied the application again on July 9, 2018. (Tr. 620-633). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## **Issues Raised by Plaintiff**

Plaintiff raises the following point:

> The ALJ erred in failing to consider evidence in his step 3 analysis to determine whether plaintiff met a Listing.

## **Applicable Legal Standards**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial

review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above.  He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.   The ALJ found that plaintiff had severe impairments of a history of acute widespread infection process secondary to tooth abscess, interstitial pulmonary fibrosis with plural thickening, and restrictive lung disease with a history of emphysema and tracheostomy.   The ALJ found that plaintiff did not meet Listing 3.02, claiming that "the severity of the claimant's symptoms does not meet the criteria of the subparts of this listing because pulmonary function testing was performed while he was in the hospital undergoing treatment for lung infection with empyema and prior to the last determination that the claimant was not disabled."   The ALJ found that plaintiff had the RFC to perform work at the sedentary exertional level.   Based on the testimony of the VE, the ALJ concluded that plaintiff was unable to do his past relevant work, while also making an alternative finding that he was able to do other jobs at the sedentary exertional level which exist in significant numbers in the national economy.

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff, focusing on the relevant period from November 1, 1994, the denial date of his previous application, to December 31, 1997, the date last insured.[3]

1.  **Agency Forms**

Plaintiff was born in 1969 and was almost 23 years old on the alleged onset date. (Tr. 54). He previously worked as a cook, dishwasher, stocker, and delivery driver. At the time of his Disability Determination Explanation in February 2016, plaintiff was 5'8" and weighed 245 pounds. (Tr. 54).

2.  **Medical Expert**

In January 2018, the ALJ requested an opinion from Dr. Steven Golub regarding plaintiff's claimed disability for the period of September 3, 1992 to December 31, 1997. (Tr. 876). In his responses, Dr. Golub remarked that plaintiff's incident in 1992 "was quite severe & clinically significant" before describing plaintiff's medical problems as vascular accident, laryngeal-tracheal separation, bilateral pneumonia with empyema, and surgical thoracotomy. (Tr. 896). He found that the plaintiff's impairments met Listing 3.02, chronic respiratory disorders. Writing about the Listing in relation to plaintiff, Dr. Golub stated, "[p]ost incident he had clinical manifestations of compromised pulmonary function with a requirement for supplemental oxygen/oxygen desaturation which would be expected to remain

---

[3] An individual is only entitled to DIB if he was "under a disability" within the meaning of the Social Security Act by the date his insured status expired. 20 C.F.R. §§ 404.131(a), 404.320(b)(2); *Pepper v. Colvin*, 712 F.3d 351, 354, 369 (7th Cir. 2013).

permanent. Pulmonary function testing was not noted in the medical records." (Tr 897).

3.   **Evidentiary Hearing**

Plaintiff was 48 years old at the time of the hearing. During the hearing, plaintiff's counsel asked questions specific to the period of 1993 to 1997. Plaintiff reported being able to stand for 30-minute intervals, needing a 5-minute rest break in between. He stated that extreme temperatures and humidity affected his ability to breathe and his stamina. (Tr. 655-656). He said he was more susceptible to contracting colds. (Tr. 656-657). During this time, plaintiff reported spending most of his time watching television and talking to people, mostly while sitting in a reclined position to reduce pressure on his lungs. (Tr. 658).

Plaintiff claimed he was unable to do yard work or clean his house. He reported that he was able to clean dishes, but it took him an hour. He also admitted grocery shopping. (Tr. 657-658).

4.   **Medical Records**

While in basic training in August 1992, plaintiff had a tooth extraction that developed an abscess. The abscess spread to plaintiff's pharyngeal space and neck, which required intubation for several days, as well as incision and drainage of his neck. Plaintiff subsequently developed pericarditis and pericardial effusion, as well as mediastinitis and pneumonitis with bilateral empyemas. Plaintiff underwent a tracheostomy, drainage of the neck abscesses and mediastinum, bilateral chest tube

placement, and a left thoracotomy with pericardial window. He remained on a ventilator and intravenous antibiotics for several weeks.

Plaintiff underwent a pulmonary function test in March 1993 with Dr. Daniel Belcher, which demonstrated a forced vital capacity (FVC) of .92 and a forced expiratory volume in one second (FEV1) of .90, with results showing severe restrictive ventilator defect. (Tr. 604). In a letter dated April 25, 1994, Dr. Daniel Belcher stated plaintiff was under his care during his extensive hospitalization at the Indianapolis VA Medical Center. Plaintiff continued to follow-up with Dr. Belcher in the medicine clinic on a regular basis. Dr. Belcher opined plaintiff was "doing relatively well." His primary medical problem was chronic interstitial pulmonary fibrosis and pleural thickening, which compromised plaintiff's respiratory status. Dr. Belcher also wrote plaintiff was coping with his limited respiratory status and was active and able to perform activities of daily living. Exercise and physical exertion were somewhat limited. Plaintiff's condition was stabilized, but Dr. Belcher stated that plaintiff would have a permanent disability with respect to his pulmonary status. Moreover, his respiratory status was significantly reduced. He could walk about one block and run for one minute. If he did so slowly, plaintiff could walk up to several blocks. On physical exam, his chest was clear to auscultation with diffusely reduced breath sounds. (Tr. 610-11).

In September 1994, plaintiff's chest x-rays showed pleural parenchymal thickening on the right lateral chest wall, with no focal active disease. (Tr. 276). Plaintiff underwent a pulmonary function test in August 2010 with Dr. Edmundo

Sandoval, which demonstrated an FVC of 1.88, an FEV1 of 1.54, and a total lung capacity of 46%. (Tr. 1860). Plaintiff had another pulmonary function test in December 2014, which revealed an FVC of 1.54, an FEV1 of 1.22, and a total lung capacity of 38%. (Tr. 1558-1559).

### 5. State Agency RFC Assessments

On February 2, 2016, Dr. Howard Tin reviewed plaintiff's records for a psychiatric review technique and determined there was insufficient evidence to make a determination on plaintiff's impairment prior to the date last insured. Dr. Michael Nenaber was consulted as well and determined there was insufficient evidence prior to the date last insured to establish the severity of plaintiff's impairment. (Tr. 55-57). At the reconsideration level, Dr. David Biscardi and Dr. LaVerne Barnes reached the same conclusion. (Tr. 65-67).

## Analysis

Plaintiff argues that that the ALJ incorrectly determined at step 3 that he did not meet Listing 3.02. He contends that he satisfied the Listing requirements set forth in Sections 3.02A and B, and that the ALJ's finding was contrary to the plain language of the listing.

At step three of the sequential evaluation process, the ALJ determines whether a plaintiff's impairments meet or equal "an impairment found in the Listing of Impairments;" if so, the plaintiff "is presumptively eligible for benefits." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. § 404.1520(a)(4)(iii). "In

considering whether a claimant's condition meets or equals a listed impairment, the ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Minnick*, 775 F.3d at 935. As with any other conclusion, the ALJ must build a logical bridge from the evidence to his conclusion that a plaintiff does not meet a Listing. See, *e.g.*, *ibid.* at 936; *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018).

To meet or equal a Listing, plaintiff must satisfy all the criteria of the listed impairment. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), citing *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (citing cases). Listing 3.02 Chronic respiratory disorders due to any cause except CF (for CF, see 3.04) with A, B, C, or D, subsection A requires an "FEV1 (see 3.00E) less than or equal to the value in Table I-A or I-B for your age, gender, and height without shoes (see 3.00E3a)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02A. In the case of plaintiff, the value provided for a male, age 20 or older, at a height of 68 inches without shoes requires a FEV1 less than or equal to 1.60. *Ibid.* Listing 3.02 subsection B requires an "FVC (see 3.00E) less than or equal to the value in Table II-A or II-B for your age, gender, and height without shoes (see 3.00E3a)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02B. The value provided for a male, age 20 or older, at a height of 68 inches without shoes requires a FVC less than or equal to 2.0. *Ibid.* Listing 3.00E provides, in relevant part, "[w]e use your highest FEV1 value to evaluate your respiratory disorder under 3.02A . . . and your highest FVC value to evaluate your respiratory disorder under 3.02B, regardless of whether the values are from the same forced expiratory maneuver

or different forced expiratory maneuvers."

Plaintiff's March 1993, August 2010, and December 2014 FEV1 tests all measured below the 1.60 requirement. Plaintiff's March 1993, August 2010, and December 2014 FVC tests also all measured below 2.0 requirement. Plaintiff argues that, extrapolating from this data, he met the Listing during the relevant time frame of November 1, 1994 to December 31, 1997.

The Commissioner argues that the ALJ ably dismissed this contention in his decision, stating that one of the data points, the March 1993 test, was completed while plaintiff was still in the hospital with a lung infection, seemingly invalidating the whole argument. The Commissioner does not discuss this point in relation to the other tests from years later, which tend to show a trend of plaintiff meeting the Listing. Nor is this information discussed in combination with ALJ-requested medical examiner Dr. Golub's opinion that, for the period of September 3, 1992 to December 31, 1997, plaintiff met the Listing. The ALJ's discussion did not clear the large evidence hurdle in this case necessary to build a logical bridge from the evidence to his conclusion.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social

security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** July 30, 2019.

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**